Michael Brett MOORE and William
Roger BONNELL *v.* STATE of Arkansas

CR 78-145                                         576 S.W. 2d 211

Opinion delivered February 5, 1979
(In Banc)
[Rehearing denied February 26, 1979.]

*McArthur & Lassiter* and *Solloway & Jackson, P.A.*, by:
*Lanny K. Solloway*, for appellants.

*Bill Clinton*, Atty. Gen., by: *Ray Hartenstein*, Asst. Atty.
Gen., for appellee.

CONLEY BYRD, Justice. The trial court upheld the search
of appellants' U-Haul trailer on the basis of consent and
sentenced appellants to five years each for violating the
Uniform Controlled Substances Act, Acts 1971, No. 590. The
issue on this appeal is whether the evidence is sufficiently

clear and positive to sustain the State's contention that appellants consented to the search.

The record shows that the burglar alarm went off at the Toll Manufacturing Company, 3700 Shackleford Road, Little Rock, about 4:30 a.m. on August 11, 1976. Two Pulaski County deputy sheriffs answered the burglar alarm. They were let into the plant gate by Terry McGuire, the plant superintendent. After the officers had been unable to find any exterior evidence of a break-in, they took off to investigate appellants who were driving their automobile on a public road some 100 to 200 yards behind the plant on 36th street.

Sergeant Rocky Woods testified that he was driving behind the Toll Manufacturing Company's building when he saw the lights on appellants' vehicle come on then go off. After some discussion with Sergeant Ledbetter they jumped back in their cars, and raced around and stopped appellants. Sergeant Woods pulled in front of appellants' vehicle and Sergeant Ledbetter pulled along the side of appellants' vehicle for purposes of blocking it. After ordering appellants out of the vehicle and placing them under arrest for burglary, Sergeant Woods made inquiry as to what was in the trailer. He states that in answer to his question to appellant Moore as to whether Moore cared whether the officer looked in the trailer, that appellant Moore stated: "No, not at all" and handed him the keys to the Slaymaker lock that secured the trailer. In further cross-examination he stated that he and Ledbetter never got out of their cars before taking off to investigate appellants. It was also established that the burglar alarm turned out to be a false alarm. Although Sergeant Woods had consent to search forms in his vehicle, he did not bother to get one signed. Sergeant Woods stated that when he stopped the appellants he had advised them to turn the ignition off, remove the keys and get out of the car.

Sergeant Ledbetter testified that after he saw the lights on appellants' vehicle come on, he never saw them go off. He says that when Officer Woods asked if he could look in the trailer, that appellants handed him the keys. He states that appellants were under arrest at the time. On cross-examination he admits that he and Sgt. Woods did not know

that a burglary had in fact been committed and that all of the officers had answered many false alarms in the past. Their only reason for arresting appellants was a presumption from the burglar alarm. Sgt. Ledbetter was not sure whether appellants had the keys in their hand when Sgt. Woods asked to look in the trailer or whether appellants reached back in the car and took them from the ignition.

Robert J. Raley, Sr., plant manager for Toll Manufacturing Company, stated that Officers Woods and Ledbetter had made their periphery search of the outside of the building and were standing on the porch of the office ready to go search the inside of the building when Terry McGuire noticed a car turning around on 36th Street. He suggested to the officers that someone that was involved in the burglary was over there.

Terry McGuire, the plant superintendent, testified that he was the first person to call the officers' attention to the appellants' car. He says the lights were not blinked off and or or anything like that. The car was in a turn around spot on 36th Street when he saw it.

Appellant Moore testified that he was advised by Sgt. Woods that they were under suspicion of burglary, that Sgt. Woods had a right to search the vehicle and that Sgt. Woods demanded the key. Moore says that, at the time, he was outside the car but the car was still running. When Officer Woods told him to give him the key, he replied that he did not have the keys and that Sgt. Woods reached in the car, turned the ignition off and took the key. He states that the officers never asked permission to look in the trailer.

Appellant Bonnell says that he was told to stay in front of the car which he obeyed. He could not quite comprehend everything that was said but after hearing the officers making some statement to the effect that they had a right to search, Officer Woods reached in the car and took the keys.

We have consistently held that when the State relies upon a consent to make a search the burden is upon the State to show such consent by "clear and positive testimony," *Hock*

v. *State,* 259 Ark. 67, 531 S.W. 2d 701 (1976), *White* v. *State,* 261 Ark. 23-D, 545 S.W. 2d 641 (1977) and *Rodriquez* v. *State,* 262 Ark. 659, 559 S.W. 2d 925 (1978). To permit a consent to search to be shown by any less quantum of proof would permit the fact finder to issue in effect an ex post facto search warrant. Upon the record before us, we hold that the State has not sustained its burden of proof to show that the search of appellants' U-Haul trailer was with their consent, *State* v. *Osborn,* 263 Ark. 554, 566 S.W. 2d 139 (1978).

The State to sustain the verdict suggests that the search was proper under the automobile exception set out in *Chambers* v. *Maroney,* 399 U.S. 42, 90 S. Ct. 1975, 26 L. Ed. 2d 419 (1970). We disagree. Under the facts here, the officers, being informed of nothing more than a mere possibility that a burglary might have been committed, could not have had "reasonable cause to believe that [appellants] had committed a felony." Without reasonable cause to believe that appellants had committed a felony, the officers had no authority to arrest appellants, Ark. Crim. Proc. Rule 4.1, and consequently, no authority to make a search incident to an arrest, Ark. Crim. Proc. Rule 12.4(b). See also, *Sibron* v. *State of New York,* 392 U.S. 40, 88 S. Ct. 1889, 20 L. Ed. 2d 917 (1968).

Reversed and remanded.

Harris, C.J., and Fogleman, JJ., dissent.

John A. Fogleman, Justice, dissenting. I agree that the search made in this case cannot be upheld as an automobile search, or as a search incident to a lawful arrest. It appears to me that it was too broad in scope and extent to be justified as incidental to the arrest of appellants. I do not agree that there was no probable cause for arrest, however. I disagree on the question of consent to search and I draw inferences from the testimony that are decidedly different from those drawn by the majority. I do not think that the trial court's holding can be said to be clearly against the preponderance of the evidence, as we must say, in order to reverse that holding. *State* v. *Osborn,* 263 Ark. 554, 566 S.W. 2d 139. I would also point out that, in order to be clear and positive, it is not

necessary that evidence be undisputed.[1] *State v. Sherrick*, 98 Ariz. 46, 402 P. 2d 1 (1965), cert. den. 384 U.S. 1022, 86 S. Ct. 1938, 16 L. Ed. 2d 1024 (1966). Even if we equate "clear and positive" testimony with "clear and convincing evidence" (which I do not), the fact that the evidence is disputed is not determinative of the question. *Kelly v. Kelly*, 264 Ark. 865, 575 S.W. 2d 672 (1979). We said in *Kelly* that the latter degree of proof lies somewhere between a preponderance of the evidence and proof beyond a reasonable doubt, and is simply that degree of proof that will produce in the trier of fact a firm conviction as to the allegation sought to be established.

If we made appropriate allowances for the superior position of the trial judge in evaluating the credibility of the witnesses, it is clear to me that the "clear and positive" test was met and that we cannot say that the finding of the trial court was clearly against the preponderance of the evidence.

Both police officers arrived at Toll Manufacturing Company within a few minutes after the burglar alarm was first sounded. Ledbetter was only a minute or two behind Woods. Woods testified that when he saw the car lights come on, the burglar alarm was still audible and that, as he came around the building, he saw the lights go off. He said that, after a period of about 30 seconds, he saw the lights come on again, in the same spot, but then their movement indicated that the vehicle was moving backwards. According to his estimate, the car was somewhere between 100 and 300 yards from the Toll Building, but on the perimeter of the Toll parking lot. Until

---

[1]Not all jurisdictions accept the proposition that any more than a preponderance of the evidence is required to establish consent to search. See, e.g., *People v. James*, 19 Cal. 3d 99, 137 Cal. Rptr. 447, 561 P. 2d 1135 (1977); *State v. Buckner*, 223 Kan. 138, 574 P. 2d 918 (1977); *U.S. v. Matlock*, 415 U.S. 164, 94 S. Ct. 988, 39 L. Ed. 2d 242 (1974). We adopted the "clear and positive" degree of proof in *Hock v. State*, 259 Ark. 67, 531 S.W. 2d 701. While there is some question about this degree of proof being required in every case where justification for a warrantless search is based upon an allegation of consent, I think that it is certainly the proper rule when the defendant is under arrest when the "consent" is given, or when the evidence shows no more than acquiescence to an assertion of lawful authority by the searching officers. See *Rodriquez v. State*, 262 Ark. 659, 559 S.W. 2d 925; *Hock v. State*, supra; *White v. State*, 261 Ark. 23-D, 545 S.W. 2d 641. Thus, I consider the "clear and positive" rule to be applicable to this case.

he arrived at the vehicle he thought the car was on the parking lot. Woods said that he called Ledbetter's attention to these lights. This officer said that, since he felt that the occupants of the car had caused the burglar alarm, he and Ledbetter went immediately to prevent this vehicle from leaving. Woods immediately noticed that the automobile bore an out-of-state license and that a U-Haul trailer was attached to it. The trailer was padlocked. Woods said that he first asked the driver and his companion to step out of the car and asked for identification. He stated that after they gave him their driver's licenses, he advised appellants that he had reason to believe that they were involved in a burglary at the Toll Manufacturing Company and that he was placing them under arrest for burglary. Woods testified that he advised appellants of their rights, and then asked them what they had in the trailer. He stated that one of them (Moore, he believed), answered that it was dental equipment he was taking to his brother. According to Woods, after Moore explained further, he asked, "Well, do you mind if I see in the dental equipment you have in the trailer because we have had the burglary alarm going off" and Moore responded, "Here's the keys, go ahead and look" and handed him the keys with which Woods unlocked the trailer.

Sgt. Ledbetter said that, upon arrival at the Toll Manufacturing Company premises, he and Woods proceeded to the building to check it, and as they "started up," he observed the headlights of the automobile come on and saw that the vehicle started moving east at a slow speed. He did not see the lights come on and go off. He said that he never did go all the way around the building and that Woods was "spotlighting" the building to see if he could find an "entry hole" in it.

Ledbetter said that the officers identified themselves when they stopped appellants and that appellants furnished identification upon request and were very cooperative. He corroborated the testimony of Woods as to the advice given to appellants, the request for permission to look inside the trailer and the obtaining of the keys. He said that he was standing up in front of the car, but that he heard Woods say something about a burglary and heard something said about dental lab chairs or dental equipment. He said that the boxes

in which the marijuana was found bore labels reading, "Four chairs per box." Ledbetter said that he suspected appellants of burglary because of the suspicious movements of the vehicle at a scene where a burglar alarm was going off about 200 yards away and, from past experience, he knew burglars used U-Haul trailers to haul away their loot.

Robert J. Raley, Sr., plant manager at Toll Manufacturing Company, was alerted and came to the plant after the officers and Terry McGuire, the plant superintendent, had arrived. He felt sure that an outside inspection of the building, which revealed that no doors were open or windows were broken, had been made, but he did not observe it. He did not think the officers had been at the scene long enough to check every lock, window and door to determine whether someone had been in the place. He said that preparations were being made for the party to go inside the building when the car was turning around and that he and McGuire told the sheriff's deputies that maybe someone that had been involved in the burglary was over there. He said that the officers left immediately. He stated that there was nothing unusual about the officers stopping a car leaving a place from which its occupants could have had access to the building.

McGuire said that the officers had driven around the building and made a visual check and reported that they did not find any visible evidence of open doors or anything showing visible entry, but that nobody had really made a check of the plant before Officers Woods and Ledbetter left, and that he and Raley had to await the arrival of another officer to come and make a visual check. McGuire did not see the lights blink on and off, but he had been looking in another direction and happened to look toward the car and saw it with the lights on. It appeared to him that the car was "backing out" because he saw the "back-up" lights on it.

The evidence that the movements of the automobile on the perimeter of the parking lot while the burglar alarm was still sounding and at a time when the check of the building had not been completed was a basis for the officers to reasonably suspect that the occupants of the automobile were committing, or had committed, a felony. Under these cir-

cumstances it was proper for the officers to stop appellants and obtain identification and determine the lawfulness of their conduct. Rule 3.1, Arkansas Rules of Criminal Procedure. The officers would have been derelict in the performance of their duties, if they had not done so. To say the very least, the officers had reasonable cause to believe that the occupants of the vehicle were witnesses to the offense of burglary, a felony, and had the right to obtain identification of these persons and to ascertain what information they had about the burglary. Rule 3.5, Arkansas Rules of Criminal Procedure. When the officers saw that the out-of-state automobile was towing a U-Haul trailer, they had reasonable cause to believe that the occupants had committed the felony of burglary, knowing that such a trailer was commonly used by burglars to conceal and haul stolen property. See *Sanders* v. *State,* 259 Ark. 329, 532 S.W. 2d 752; *Rowland* v. *State,* 263 Ark. 77, 561 S.W. 2d 304; *Perez* v. *State,* 260 Ark. 438, 541 S.W. 2d 915; *Williams* v. *State,* 258 Ark. 207, 523 S.W. 2d 377; *Johnson* v. *State,* 249 Ark. 208, 458 S.W. 2d 409, *Wickliffe* v. *State,* 258 Ark. 544, 527 S.W. 2d 640. They had the right to arrest these suspects. Rule 4.1, Rules of Criminal Procedure.

Although appellants presented a horror story about the actions of the officers, the trial court resolved the question of credibility against them, and this court is bound by that determination. *State* v. *Osborn,* 263 Ark. 554, 566 S.W. 2d 139.

I would affirm the judgment.

I am authorized to state that the Chief Justice joins in this opinion.