Gary GARRETT, Steve Garrett, Craig Dowland, Donna Dowland, Bruce Silverman, Wyatt Carey, Dave Somers, James Bishop, Rebecca Turner, and Greg Parish, Plaintiffs,

v.

Col. Tommy L. GOODWIN, Director of the Arkansas State Police; Lt. Col. George Moye, Arkansas State Police; Maj. Buren Jackson, Arkansas State Police; Capt. Dave Davidson, Arkansas State Police; Lt. Dave Rosegrant, Arkansas State Police; Lt. Fred Odom, Arkansas State Police; Sgt. Bob Cooper, State Police; Sgt. Dwight Tosh, Arkansas State Police; Sgt. Bill Young, Arkansas State Police; Capt. Jim Beach, Arkansas State Police; Manuel Holcomb, Director of the Arkansas State Crime Laboratory; Roy Johnson, Chief of the State Highway Police; Division of the Arkansas Highway and Transportation Department; Capt. Max Ray, State Highway Police Division of the Arkansas Highway and Transportation Department; Lt. Charles Breeding, State Highway Police Division of the Arkansas Highway and Transportation Department; Lt. Danny McClean, State Highway Police Division of the Arkansas Highway and Transportation Department; Sgt. Tommy Briggs, State Highway Police Division of the Arkansas Highway and Transportation Department; Charles Dye, Chief of the Blytheville, Arkansas, Police Department; Sgt. Mike Medford, Blytheville, Arkansas, Police Department; and Coolidge Conlee, St. Francis County Sheriff, Defendants.

No. LR–C–82–385.

United States District Court,
E.D. Arkansas, W.D.

Dec. 17, 1982.

Arkansas Civil Liberties Foundation, Inc., John Wesley Hall, Jr., Larry D. Vaught, Little Rock, Ark., for plaintiffs.

Steve Clark, Atty. Gen., Little Rock, Ark., for defendants Goodwin, Moye, Jackson, Davidson, Rosegrant, Odom, Cooper, Tosh, Young, Beach, and Holcomb.

Chris Parker, Ark. H. and T. Dept., Little Rock, Ark., for defendants Johnson, Ray, Breeding, McClean, and Briggs.

Graham Sudbury, Blytheville, Ark., for defendants Dye and Medford.

Fletcher Long, Jr., Forrest City, Ark., for defendant Conlee.

GEORGE HOWARD, Jr., District Judge.

## CONSENT DECREE AND JUDGMENT

Based on the Joint Proposed Findings of Fact and Conclusions of Law entered in this case, the parties enter into the following consent decree for injunctive relief:

1. The Court adopts the Joint Proposed Findings of Fact and Conclusions of Law as the findings of the court in this case under F.R.C.P. 52(a).

2. The Court further finds that the conduct of this roadblock, as it affected the plaintiffs herein, constituted a seizure under the Fourth Amendment to the United States Constitution.

3. The defendants, State Police employees, are permanently enjoined to promulgate a written policy before March 1, 1983 based on the Findings of Fact and Conclusions of Law adopted by the Court herein governing the conducting of licensing and registration roadblocks and to follow such policy. This policy shall, at a minimum, address the following:

   A. Decision to conduct roadblock to be made at a management level;

   B. Considerations governing location, duration, magnitude, etc.;

   C. Presence of non traffic enforcement personnel at or near the scene;

   D. Ordering motorists out of vehicles;

   E. Fourth Amendment considerations, including the following:

      a. Plain view searches

      b. Use of drug dogs

      c. Probable cause to search

      d. Consent to search

      e. Use of D.E.A. drug courier profile

   F. Mandatory instruction and/or briefing prior to the conducting of the roadblock.

4. The parties agree and the Court holds that damages claims of all plaintiffs as well as claims for declaratory relief are hereby waived.

5. It is not the intention of this decree to restrict the activities of law enforcement other than is required by the Courts or the legislature under the Fourth Amendment, nor is it the intention of the parties that the Court will maintain any kind of supervisory role over the Arkansas State Police with regard to roadblocks.

6. The parties further recognize that significant changes in the law of search and seizure that may affect this decree can be remedied by modification of the written policies of the Arkansas State Police promulgated pursuant to this decree, and that modification of the decree itself is not necessary or required.

7. This decree only affects the actions of the Arkansas State Police in conducting roadblocks for drivers license and vehicle registration checks.

8. By entering into this decree, defendants, State Police employees, do not admit either liability or wrongdoing.

9. The parties agree that the plaintiffs herein are entitled to a reasonable attorneys' fee and that the amount of such fee shall be determined by the Court.

Plaintiffs are to submit their request for attorneys' fee, with supporting documentation by January 4, 1983. The defendants shall respond by January 14, 1983, and the plaintiffs may reply by January 21, 1983.

It is hereby considered, ordered, decreed and adjudged that this Consent Decree be entered this 17th day of December, 1982.

IT IS SO ORDERED.

JOINT PROPOSED FINDINGS OF FACT
AND CONCLUSIONS OF LAW

TABLE OF CONTENTS

page

I. FINDINGS OF FACT _____ 109
    A. Introduction _____ 110
    B. Parties—Plaintiffs _____ 110
    C. Parties—Defendants _____ 111
    D. Civil Conspiracy _____ 112
    E. The Saturation Enforcement Plan of The
       Arkansas State Police _____ 113
    F. Planning the May 3–4 I–40 Roadblock _____ 113
    G. Conducting the May 3–4 I–40 Roadblock _____ 114
II. CONCLUSIONS OF LAW _____ 116
    A. Preliminary Matters _____ 116
       1. Jurisdiction _____ 116
    B. Roadblocks as a Seizure _____ 116
    C. License and Registration Check Roadblock _____ 116
    D. General Issues of Vehicle Searches _____ 118
       1. Ordering Occupants from Vehicles at Such Roadblocks _____ 118
       2. Burden of Justifying Warrantless Searches _____ 119
       3. Plain View Searches _____ 119
       4. Justification and Scopes of Vehicle Searches _____ 119
       5. Initiation of Consent Searches _____ 120
       6. The DEA Profile is Not Reasonable Suspicion or
         Probable Cause _____ 121
    E. Overall Considerations _____ 121

## I. FINDINGS OF FACT

The parties make the following Joint Proposed Findings of Fact and Conclusions of Law pursuant to F.R.C.P. 52(a) in support of the proposed Consent Decree:

## A. Introduction

1.1 On May 3–4, 1982, the Arkansas State Police and other law enforcement agencies conducted a roadblock on Interstate 40 near Forrest City, Arkansas. This roadblock lasted twenty-three hours from 6:00 p.m. on May 3 to 5:00 p.m. on May 4.

1.2 On May 29, 1982, seven motorists and three passengers of some of the motorists filed this action for declaratory and injunctive relief alleging that (1) the Arkansas State Police policy of conducting "saturation enforcement" roadblocks on interstate highways is unconstitutional under the Fourth Amendment and (2) the May 3–4, 1982 roadblock on Interstate 40 was unreasonable and violated the Fourth Amendment because of the way it was conducted. On August 23, 1982, plaintiffs filed an Amended Complaint with leave of the Court to allege a conspiracy and name additional defendants in management of the agencies involved who participated in the alleged conspiracy.

## B. Parties—Plaintiffs

1.3 Plaintiff Gary Garrett is a resident of Saline County, Arkansas. He regularly drives the state and interstate highway system in Arkansas, traveling to West Memphis, Arkansas from Benton, Arkansas an average of two or three times a week.

1.4 Plaintiff Steve Garrett is a resident of Pulaski County, Arkansas. He regularly drives the state and interstate highway system in Arkansas. He often travels with his brother Gary Garrett to West Memphis, Arkansas.

1.5 Plaintiff Craig Dowland is a resident of Crittenden County, Arkansas. He travels daily interstate to Memphis, Tennessee to work over the state and interstate highway system in Arkansas.

1.6 Plaintiff Donna Dowland is a resident of Crittenden County, Arkansas. She and Craig Dowland are married. She regularly drives the state and interstate highway system in Arkansas.

1.7 Plaintiff Bruce Silverman is a resident of Texas. He regularly travels between Austin, Texas and Reynoldsville, Ohio. He was doing so on May 4, 1982, driving from Texas to Ohio, and he will do so again a few times a year.

1.8 Plaintiff Wyatt Carey is a resident of Tennessee and Texas. His work causes him to travel regularly to Arkansas where he must drive over the state and interstate highway system.

1.9 Plaintiff Dave Somers is a resident of Austin, Texas. He has driven and will in the future be driving through Arkansas on the state and interstate highway system.

1.10 Plaintiff James Bishop is a resident of Pine Bluff, Arkansas. He is a truck driver who regularly travels on the state and interstate highway system in Arkansas.

1.11 Plaintiff Rebecca Turner is a resident of Memphis, Tennessee. She regularly travels into or through Arkansas on the state and interstate highway system.

1.12 Plaintiff Greg Parish is a resident of Memphis, Tennessee. He regularly travels into or through Arkansas on the state and interstate highway system.

1.13 Each of the plaintiffs was detained at the roadblock conducted by the defendants in St. Francis County, Arkansas on May 3–4, 1982.

1.14 Plaintiffs Steve Garrett, Craig Dowland, Dave Somers, Greg Parish, and James Bishop were cited or subjected to a custodial arrest for driver's license or vehicle registration offenses.

1.15 Plaintiffs Bruce Silverman and Wyatt Carey were driving vehicles stopped at the roadblock, and they were not cited for any traffic offenses. Their vehicles, were searched and alleged controlled substances were found for which they were charged with misdemeanor possession in state court. They allege their vehicles were searched without probable cause or consent, although defendants contend that the searches were lawful. Silverman's luggage was also searched. Carey's vehicle was also subjected to a search by a "drug dog" allegedly without any legal justification or consent. The defendants contend it was consensual and legally justifiable.

1.16 Plaintiff Gary Garrett was a passenger in a car driven by his brother, Steve Garrett. He was subjected to a stop at the roadblock and made to wait while money was wired for his brother's bail because agents of defendant Conlee refused to allow his brother to sign the ticket and allow them to proceed.

1.17 Plaintiff Donna Dowland was a passenger in a car driven by her husband at the roadblock. After his arrest for not having a driver's license, she was effectively detained with him because agents of defendant Conlee would not permit her to call a bail bondsman from the jail and because they refused to allow his brother to sign the ticket and allow them to proceed.

1.18 Plaintiff Rebecca Turner was a passenger in a car driven by plaintiff Greg Parish stopped at the roadblock. Parish was cited for not having a current inspection sticker, and they contend that Parish's car was searched without probable cause or consent. Also, Turner's purse was searched and controlled substances were found in the purse for which Turner was charged with misdemeanor possession in state court. Parish was cited only for having no inspection sticker.

1.19 Plaintiff James Bishop was driving a truck, and he was stopped at the roadblock. He was issued a traffic citation which was later nolle prossed, and the cab of his truck was searched allegedly without probable cause or consent. Nothing illegal was found, and he was not charged in state court for any offense as a result of this search. It cannot be determined which agency conducted the search.

1.20 Trial was set for those plaintiffs charged from offenses occurring at the roadblock in Forrest City Municipal Court on June 2, 1982.

1.21 Plaintiff James Bishop's traffic violation and plaintiff Bruce Silverman's misdemeanor possession of marijuana charge were nolle prossed by the prosecuting attorney in the Forrest City Municipal Court before jeopardy attached.

1.22 Plaintiffs Steve Garrett, Greg Dowland, and Dave Somers were found guilty of expired or non-possession of driver's license offenses after trial in Forrest City Municipal Court.

1.23 Plaintiffs Dave Somers and Rebecca Turner were found guilty of misdemeanor possession of marijuana in Forrest City Municipal Court.

1.24 Plaintiff Wyatt Carey was acquitted of the drug charges against him after the search of the truck of his employer which he was driving was suppressed. Plaintiff Carey also asserted that he could not be found guilty of a possessory offense when it could not be shown he had exclusive control of the vehicle. The decision of the Municipal Court did not reach that ground, but, rather, it was based on suppression of the evidence from an illegal search without probable cause.

C. *Parties—Defendants*

1.25 The following officers of the Arkansas State Police were sued in their official capacities as defendants: Col. Tommy L. Goodwin, Director, Lt. Col. George Moye, Assistant Director, Maj. Buren Jackson, Commander of the Eastern Region, Capt. Dave Davidson, Commander of Troop D, Lt. David Rosegrant, Lt. Fred Odom, Sgt. Bob Cooper, Sgt. Dwight Tosh, Sgt. Bill Young and Capt. J.M. Beach.

1.26 Also sued was Manuel Holcomb as Director of the Arkansas State Crime Laboratory. He is sued in his official capacity.

1.27 The following officers of the Arkansas Highway Police Division of the Arkansas Highway and Transportation Department are also sued: Roy Johnson, Chief, Capt. Max Ray, Captain of District 5, Lt. Charles Breeding, Lt. Danny McClean, and Sgt. Tommy Briggs. Each is sued in his official capacity.

1.28 Also sued were Chief Charles Dye and Sgt. Mike Medford of the Blytheville, Arkansas, Police Department. Also sued was Sheriff Coolidge Conlee, Sheriff of St. Francis County, Arkansas. All were sued in their official capacity.

D. *Civil Conspiracy*

1.29  Plaintiffs effectively raised the issue of the potential existence of a civil conspiracy in the original complaint. With leave of the court, plaintiffs amended the complaint to specifically allege the existence of a civil conspiracy.

1.30  The purpose of the civil conspiracy allegation was to expand the rules of evidence in this case and the number of parties against whom relief may be sought. Defendants contend that they were acting in good faith in establishing this roadblock both in its planning and execution. Plaintiffs contend, on the other hand, that there was an unlawful purpose of the roadblock; *i.e.,* violations of constitutional rights of motorists and passengers. Plaintiffs have never and do not accuse any of the defendants of engaging in a criminal conspiracy against the plaintiffs and other motorists.

1.31  Defendants Goodwin, Moye, Jackson, and Davidson, all participated in making the original decision of whether to conduct the roadblock as previously alleged. They effectively put this plan in motion which the others entered.

1.32  Defendants Davidson, Odom, Cooper, Tosh, and Beach were the ranking Arkansas State Police officers on the scene of the roadblock and supervised other officers of the Arkansas State Police.

1.33  On April 16, 1982, defendant Max Ray was notified by letter that the Arkansas State Police were planning a "traffic check-road block" on May 3 and 4 and he was asked if the Arkansas Highway Police Division wished to participate. Defendant Ray telephoned defendant Roy Johnson in Little Rock and received approval to participate by setting up a portable scale and providing personnel to check for truck size, load, and motor fuel carrier violations. Neither defendant Ray nor defendant Johnson knew which agencies would participate in the roadblock prior to May 3.

1.34  Defendants Ray, Danny McClean, and Charles Breeding attended the briefing at Forrest City Troop Headquarters of the Arkansas State Police prior to beginning the roadblock. On I–40, portable scales were set up at the rest area a quarter of a mile from the roadblock. Defendant Breeding, assisted by Buford Humphries, checked the weight and size of trucks sent to them for that purpose during the first shift of the roadblock. Defendant Tommy Briggs and Robert W. Hartman did this work at the second shift. Defendants McClean and Briggs also made some of the decisions concerning which trucks, after they had been stopped and processed by enforcement agents of the ICC and Arkansas Transportation Commission, needed to proceed to the portable scales to be weighed and measured. Defendants Ray, Breeding, McClean, and Briggs contend they did not participate in any searches of any vehicles. Defendant Johnson was not present at the roadblock.

1.35  Defendants Dye and Medford joined with the other defendants at the roadblock by agreeing to provide (Dye) and handling (Medford) a "drug dog" which was used in searches of vehicles. Specifically, the dog was used in the search of plaintiff Carey's vehicle.

1.36  Defendant Conlee participated with the Arkansas State Police defendants in the conduct alleged in the complaint in that defendant Conlee's deputies took custody of the motorists and passengers arrested by the other officers and his county general fund benefited from the fine money which was nearly $25,000.

1.37  Defendant Manuel Holcomb of the Arkansas State Crime Laboratory provided personnel from his office to conduct drug field tests at the roadblock.

1.38  In addition to the named defendants, 65 other Arkansas State Police troopers, criminal investigation division officers, and narcotics officers, two Arkansas State Highway Police officers, four employees of the Arkansas State Crime Laboratory, the Deputy Prosecuting Attorney and Circuit Judge for St. Francis County, Arkansas, representatives of the U.S. Border Patrol and two employees of the National Auto Theft Bureau participated in the decision to

conduct or the planning and execution of the roadblock.

1.39 Plaintiffs waive any damages.

## E. *The Saturation Enforcement Plan of The Arkansas State Police*

1.40 The Arkansas State Police has a policy of conducting "saturation enforcement" on state and interstate highways in Arkansas. This policy was adopted at the headquarters level by defendants Goodwin and Moye sometime before January 1982. Each of the twelve Arkansas State Police districts was expected to conduct at least one "saturation enforcement" every month.

1.41. The decision of when and where to conduct a "saturation enforcement" was a decision not only of the Highway Patrol Division of the Arkansas State Police but also the Criminal Investigation Division.

1.42 On January 15, 1982, defendant Moye issued a memorandum to defendant Jackson and others which dealt with the need for more "saturation enforcements." This memo is Plaintiffs' Exhibit A.

1.43 The need for "saturation enforcement" in a particular area, thus, was to be determined jointly by both the Highway Patrol Division and the Criminal Investigation Division. Plaintiffs' Exhibit A states both the purpose and methodology of the Arkansas State Police in conducting "saturation enforcements." This policy was in effect when the May 3–4 I–40 roadblock occurred.

## F. *Planning the May 3–4 I–40 Roadblock*

1.44 In February 1982, defendant Davidson determined that a roadblock on I–40 would be quite productive as a "saturation enforcement." He requested authorization to do so.

1.45 In February and March 1982, defendants Davidson, Jackson, Moye, and Goodwin determined that the Arkansas State Police would conduct a 24-hour roadblock of I–40 in St. Francis County, Arkansas on May 3, 1982. The Arkansas State Police had enlisted the assistance of the Arkansas Transportation Commission, the Interstate Commerce Commission, the United States Department of Transportation, the United States Border Patrol, the National Auto Theft Bureau, the Arkansas Highway Police Division of the Arkansas Highway and Transportation Department, the Arkansas State Crime Laboratory, and the Arkansas Crime Information Center to conduct the roadblock. Also, it was planned to use a minimum of six Criminal Investigation Division officers, four Arkansas State Police narcotics officers, and "at least two narcotics dogs and handlers." The plan was to have each group of officers work in twelve hour shifts and have each shift work six hours in the west bound lane and six hours in the east bound lane. Plaintiffs' Exhibit B (memorandum of March 30, 1982, from defendant Davidson to defendant Jackson).

1.46 As a result of the I–40 roadblock the Arkansas State Police defendants expected "that we will make many arrest[s] for offenses ranging from DWI, Wanted Persons, Stolen Trucks and Cars, Drugs and Narcotics, and so forth." *Id.* It was stated in Plaintiffs' Exhibit B that these defendants expected that the I–40 roadblock "will be highly productive insofar as criminal and traffic enforcement are concerned." Plaintiffs' Exhibit B constituted a written plan of the methodology of conducting this particular roadblock requested by defendant Jackson and approved by defendant Goodwin.

1.47 Sometime before the roadblock actually occurred, some of the legal issues expected to be encountered from the conducting of a roadblock were posed to Fletcher Long, Deputy Prosecuting Attorney for St. Francis County, Arkansas. He instructed the others that "the roadblock could not be of a random nature, that [they] would stop and check all vehicles and in the event that traffic started backing up beyond a safe distance, that all vehicles would be waved through until the level getting back within safety standards and again all vehicles would be checked." (Sic) Plaintiffs' Exhibit C (memorandum of May 12,

1982 from defendant Davidson to defendant Jackson).

1.48 Defendant Davidson "contacted Circuit Judge Henry Wilkinson of the first judicial district and in general terms discussed [the] plans and discussed specifically the use of narcotics dogs in order to establish probable cause in order to search suspect vehicles. Judge Wilkinson was familiar with court decisions upholding the use of these dogs and stated he could forsee no legal problems by their use." *Id.*

1.49 The defendants were also relying on an article published in the *FBI Law Enforcement Bulletin* in determining how the roadblock would be conducted. *See* Schofield, *The Constitutionality of Routine License Check Stops: A Review of Delaware v. Prouse, FBI Law Enforcement Bulletin,* January, 1980.

G. *Conducting the May 3–4 I–40 Roadblock*

1.50 At 5:00 p.m. on May 3, 1982, defendant Davidson briefed the first crew at the Forrest City Troop Headquarters of the Arkansas State Police. Present at that meeting were the Arkansas State Police troopers, Criminal Investigation Division and narcotics officers reporting for the 6:00 p.m. to 6:00 a.m. shift. Also present were personnel from the Arkansas Transportation Commission, the National Auto Theft Bureau, and the Interstate Commerce Commission, and defendant Ray from the Arkansas State Highway Police. At the briefing, defendant Davidson stated that "the roadblock was to be conducted within the guidelines of the U.S. Supreme Court decisions dealing with roadblocks, *i.e.,* that the roadblock could not be of a random nature, that we would stop and check all vehicles and in the event that traffic started backing up beyond a safe distance, that all vehicles would be waved through until the level getting back within safety standards and again all vehicles would be checked." Plaintiffs' Exhibit C.

The briefing did not involve a discussion about the legal justification for any anticipated searches and seizures of vehicles, their occupants, their contents. Also, there was no discussion at the briefing on when and how a drug dog would be used. Defendant Davidson did not believe that such matters needed to be discussed at the briefing. The second group was similarly briefed.

1.51 When the roadblock was actually conducted, plainclothes officers other than uniformed Arkansas State Police troopers from the Highway Patrol Division were present at the scene.

1.52 When vehicles were stopped at the roadblock, uniformed troopers checked driver's licenses and vehicle registrations.

1.53 Specialized personnel from other law enforcement agencies such as the State Highway Police, the Arkansas State Highway Police, the Arkansas Transportation Commission, the U.S. Interstate Commerce Commission, and the U.S. Department of Transportation checked vehicles for weights and permits and other required documentation. The two employees of the Arkansas State Crime Laboratory were there to conduct field tests of drugs.

1.54 Initially, Criminal Investigation Division and narcotics officers and a drug dog were only to be called in to participate when uniformed troopers established probable cause from a plain view as vehicles passed through the line of the roadblock.

1.55 At some point, maybe halfway into the roadblock, the Criminal Investigation Division and narcotic officers began to walk up and down the waiting line of cars with the purpose of conducting plain view searches. A narcotics officer so testified in Carey's trial in state court.

1.56 The search of Plaintiffs Parish's and Silverman's vehicles took place without the driver of the vehicle ever having to exhibit his driver's license or vehicle registration papers.

1.57 The drug sniffing dog belonging to the Blytheville Police Department and handled by defendant Medford was brought in at the request of Arkansas State Police officers and directed by them to sniff around Plaintiff Carey's vehicle. Defend-

ant Medford only brought in the dog when requested by the Arkansas State Police.

1.58 Plaintiffs Carey and Somers allege consent to search was demanded by stating to the driver and occupants of the vehicle that the officers had a drug dog who would check their vehicle for presence of contraband whether they consented or not. Defendants dispute this allegation.

1.59 Plaintiff Silverman alleges that his car was searched at the side of the road and not the rest area, and the contents of his luggage were placed on the roadside. The alleged probable cause of the search of Silverman's vehicle was plain view observation of a "roach" in the ashtray on the dashboard of the car. As a result of this alleged plain view the officers searched the entire car and its contents, including luggage and other closed containers.

1.60 Plaintiff Carey was driving his employer's vehicle through the roadblock. With him were two passengers, and they were all on a mission for their employer. Carey was not the exclusive user of the vehicle. The vehicle had Mississippi dealer plates and it was owned by a company out of Memphis, Tennessee. Carey had a Texas driver's license. The vehicle was stopped at the roadblock, and Carey's driver's license was checked. He was waved on. Once the dealer plate was seen by the officer, the officer yelled for Carey to stop the truck and get out, which he did. When the vehicle was stopped the second time the occupants were ordered out of the vehicle. Plaintiffs contend that the drug dog was used without any legal justification and the dog gave a positive reaction for marijuana in the vicinity of the front seat. The officers reached up under the front seat and pulled out a small vial from the passenger's side which contained quaaludes. No marijuana was found in the vehicle. This drug dog lacks the capability to detect and the training to indicate the presence of quaaludes by smell. The issue of Carey's consent is not decided herein.

1.61 In Forrest City Municipal Court, the trial judge suppressed the evidence on Carey's motion for lack of probable cause,

and Carey was acquitted. The issue of Carey's exclusive control of the truck did not bear in the judge's decision to acquit him.

1.62 The plaintiff Bishop's truck was searched by officers from an unknown police agency allegedly without probable cause or consent. Plaintiff Bishop alleges Arkansas Transportation Commission officers conducted the search. Nothing illegal was found, and he was not charged with any offense as a result of the search. He was, however, charged with a traffic offense for having an unregistered vehicle, but the vehicle was registered and the offense was nolle prossed in Municipal Court.

1.63 Plaintiff Gary Garrett was a passenger in his brother plaintiff Steve Garrett's car. Steve Garrett was cited for an expired driver's license, and he was not allowed to sign the ticket and proceed because he was a resident of Pulaski County. He was detained for several hours by defendant Conlee's deputies while he waited for money to be wired to him for his bail. Gary Garrett was effectively detained with him although he was not charged. No search occurred of the vehicle. Defendant Conlee contends the Arkansas State Police imposed this requirement on his officers. The Arkansas State Police maintain that they were requested by the St. Francis County Sheriff's Deputies to require Pulaski County residents to post bond, as service of process was difficult to obtain from that county.

1.64 Plaintiff Donna Dowland was similarly effectively detained when her husband was arrested for having no driver's license in his possession. She was delayed in being allowed to call the bondsman from the jail and she was required to walk to a pay telephone to call the bondsman. With her were two small children, and she was almost nine months pregnant.

1.65 Plaintiffs allege that officers issuing tickets to the plaintiffs at the I–40 roadblock strongly suggested that as nonresidents of St. Francis County it would be in their best interest to forfeit their bonds

and not appear to contest the charge at trial. Defendants dispute this contention.

1.66  The average traffic flow on Interstate 40 at the scene of this roadblock is approximately 15,000 vehicles per day in both directions. The roadblock was conducted on one side of the road at a time for 23 hours. Therefore, approximately 7,500 vehicles passed through the roadblock.

1.67  Plaintiffs contend that the purported purpose of the roadblock for driver's license and vehicle registration checks was a pretext to enable the defendants to engage in farreaching searches for criminal evidence by pretextual plain views and pretextual searches without probable cause. Defendants dispute this contention.

1.68  Initially, all cars were stopped to avoid "randomness," but traffic backups caused the officers to stop cars in groups allowing others to pass through without being checked. Once the backup cleared, the officers again stopped all cars.

1.69  Also, defendants instructed criminal investigators and narcotics officers to remain separated from the license check area of the roadblock. They were to remain at the nearby rest area in case they were needed. However, they were engaged in searching vehicles at the roadside.

1.70  The defendants who are employees of the Arkansas Highway Police are filing a Motion for Summary Judgment the factual basis of which is the agreed Stipulations of Fact. Further agreement of these defendants to the judgment is withheld pending disposition of that Motion.

## II.  CONCLUSIONS OF LAW

2.1  The plaintiffs seek permanent injunctive relief against the policies and actions described in the Amended Complaint. The parties have agreed to the Proposed Findings of Fact as the basic facts involved in this controversy. The parties have also agreed that the legality of other specific searches and seizures need not be proved in light of this method of resolution of the case.

### A.  *Preliminary Matters*

#### 1.  *Jurisdiction*

2.2  The court has jurisdiction over the parties and the subject matter of this action under 42 U.S.C. § 1983, 28 U.S.C. § 1343(3, 4), and 28 U.S.C. § 1331, and 28 U.S.C. §§ 2201, 2202. Jurisdiction is not contested.

### B.  *Roadblocks as a Seizure*

2.3  A stop of a vehicle at a roadblock conducted for any purpose, including driver's license and vehicle registration checks, is a seizure under the Fourth and Fourteenth Amendments to the United States Constitution. *See Delaware v. Prouse,* 440 U.S. 648, 653, 99 S.Ct. 1391, 1395, 59 L.Ed.2d 660 (1979); *United States v. Martinez-Fuerte,* 428 U.S. 543, 556–58, 96 S.Ct. 3074, 3082–83, 49 L.Ed.2d 1116 (1975); *United States v. Brignoni-Ponce,* 422 U.S. 873, 878, 95 S.Ct. 2574, 2578, 45 L.Ed.2d 607 (1975); *Almeida-Sanchez v. United States,* 413 U.S. 266, 274, 93 S.Ct. 2535, 2540, 37 L.Ed.2d 596 (1973); *Carroll v. United States,* 267 U.S. 132, 153–54, 45 S.Ct. 280, 285, 69 L.Ed. 543 (1925). *See also Taylor v. Alabama,* 457 U.S. 687, 102 S.Ct. 2664, 73 L.Ed.2d 314 (1982); *Michigan v. Summers,* 452 U.S. 692, 696, 101 S.Ct. 2587, 2590, 69 L.Ed.2d 340 (1981); *Brown v. Texas,* 443 U.S. 47, 50, 99 S.Ct. 2637, 2640, 61 L.Ed.2d 357 (1979); *Dunaway v. New York,* 442 U.S. 200, 209–10, 99 S.Ct. 2248, 2254–55, 60 L.Ed.2d 824 (1979); *Davis v. Mississippi,* 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969); *Terry v. Ohio,* 392 U.S. 1, 16, 88 S.Ct. 1868, 1877, 20 L.Ed.2d 889 (1968) ("It is quite plain that the Fourth Amendment governs 'seizures' of the person which do not eventuate in a trip to the station house and prosecution for crime—'arrests' in the traditional terminology. It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person.")

### C.  *License and Registration Check Roadblock*

2.4  This case involves ostensible driver's license and vehicle registration checks on an

interstate highway. Plaintiffs do not concede that such roadblock stops are reasonable under the Fourth Amendment because of the inherent problems in such roadblocks as demonstrated by the facts of this case. The parties agree that certain safeguards are required in the conduct of such roadblocks.

2.5 The law has recognized driver's license and registration check roadblocks for quite some time. Apparently, the first reported decision is *City of Miami v. Aronovitz*, 114 So.2d 784 (Fla.1959), a civil action by a motorist to enjoin a local practice of conducting driver's license check roadblocks after he was stopped at one. He was not arrested for anything, and he was not subjected to any search. State statutes provided that motorists had to produce their licenses on demand. The Florida Supreme Court, in effect, engaged in a balancing analysis and held that there was an important purpose in conducting driver's license checks, but the court did not explain how the individual's interest was affected by the procedure. The court recognized a developing line of cases prohibiting stops for driver's license checks which were found to be a mere "surreptitious subterfuge" for a vehicle search. *Id.* at 789. The Court held that vehicle searches at a roadblock were still governed by the *Carroll* doctrine. *Id.* at 788, *citing Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

2.6 Three years later, the Kentucky Court of Appeals sustained a traffic conviction for driving without a license at a roadblock stop in *Commonwealth v. Mitchell,* 355 S.W.2d 686 (Ky.1962). The court was careful to note that it was not "sanctioning the stopping of cars for the ostensible or pretended purpose stated when in reality [the roadblock] is actuated by an ulterior motive not related to the licensing requirement, or is done as a pretext or as a subterfuge for circumventing the [probable cause requirement]." *Id.* at 687 (bracketed material added).

2.7 Other driver's license check roadblock cases in accord are: *State v. Kabayama,* 94 N.J.Super. 78, 226 A.2d 760 (1967);

*People v. Andrews,* 173 Colo. 510, 484 P.2d 1207 (Colo.1971) (lack of registration led to arrest for stolen car); *State v. Swift,* 232 Ga. 535, 207 S.E.2d 459 (1974) (marijuana seen in plain view); *Myricks v. United States,* 370 F.2d 901 (5th Cir.1967), *cert. denied* 386 U.S. 1015, 87 S.Ct. 1366, 18 L.Ed.2d 474; *United States v. Croft,* 429 F.2d 884 (10th Cir.1970) (sustaining roadblock without much discussion); *United States v. Prichard,* 645 F.2d 854 (10th Cir. 1981), *cert. den.* 454 U.S. 832, 102 S.Ct. 130, 70 L.Ed.2d 110.

2.8 The United States Supreme Court has decided some immigration roadblock cases which are pertinent to this case. The most notable is *United States v. Martinez-Fuerte,* 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976), involving a permanent immigration check point on Interstate 5 at San Clemente, California. The Court upheld the roadblock because (1) the interference with traffic was minimal, (2) immigration roadblocks have a limited purpose conducted in a "regularized manner" involving "less discretionary enforcement activity" and (3) the location of such roadblocks "is not chosen by the officers in the field, but by officials responsible for making overall decisions as to the most effective allocation of limited enforcement resources." *Id.* at 559, 96 S.Ct. at 3083. The court suggested that driver's license roadblocks may be proper due to their longstanding acceptance in traffic law enforcement. *Id.* at 560 n. 14, 96 S.Ct. at 3084 n. 14.

2.9 In *Delaware v. Prouse,* 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), the Supreme Court held that random stops for driver's license checks were unreasonable under the Fourth Amendment. In dicta the Court suggested that a roadblock might be constitutional because it involves less discretion, *id.* at 663, 99 S.Ct. at 1401:

Accordingly, we hold that except in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law,

stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment. This holding does not preclude the State of Delaware or other States from developing methods for spot checks that involve less intrusion or that do not involve the unconstrained exercise of discretion. Questioning of all oncoming traffic at roadblock-type stops is one possible alternative. We hold only that persons in automobiles on public roadways may not for that reason alone have their travel and privacy interfered with at the unbridled discretion of police officers. (footnote omitted)

2.10   In *State v. Olgaard,* 248 N.W.2d 392 (S.D.1976), the South Dakota Supreme Court held that a roadblock for drunk drivers violated the Fourth Amendment because its location was not a management decision as required by *United States v. Martinez-Fuerte, supra.* It disclaimed deciding the legality of driver's license roadblocks, but its rationale suggests that *Martinez-Fuerte* applies to all roadblocks except those set up under exigent circumstances such as roadblocks to stop fleeing felons or around crime scenes. A New Jersey Superior Court upheld a driver's license check–drunk driving roadblock in *State v. Coccomo,* 177 N.J.Super. 575, 427 A.2d 131 (1980), relying on its productivity in drunk driving arrests, a policy to only set them up at night when the taverns close, and the fact the police department followed internal rules to eliminate discretion in the officer in the field.

2.11   The only driver's license check roadblock case on an interstate highway the parties could find is *United States v. Prichard, supra.* That case involved a stop of a vehicle which caused the officers to become suspicious the vehicle was stolen. Consent was sought and obtained, and a search revealed 86 pounds of cocaine valued at $20,-000,000. The case says very little about what went on at the roadblock even though there was a five-day evidentiary hearing. *Prichard* did not involve traffic back-ups or allegations of pretextual and wholesale illegal searches. To that extent, *Prichard* is distinguishable from this case. *Prichard* did not decide the question of reasonableness per se of an interstate highway driver's roadblock.

2.12   The location of the roadblock is a management decision. The officers in the field cannot make the decision, but they may participate in it. *United States v. Martinez-Fuerte,* 428 U.S. 543, 556–58, 96 S.Ct. 3074, 3082–83, 49 L.Ed.2d 1116 (1975); *State v. Olgaard,* 248 N.W.2d 392 (S.D. 1976); *State v. Coccomo,* 177 N.J.Super. 575, 427 A.2d 131 (1980).

2.13   The enforcement needs of this limited purpose for the roadblock in the area and the staffing and safety needs for that roadblock shall be the only criteria entering into the decision of location, duration, and magnitude of the roadblock. *Martinez-Fuerte, supra.* Criminal enforcement needs have no place in determining whether, where, when, or how to conduct such a roadblock.

2.14   When conducting such a roadblock, officers whose primary or major duties are non-traffic enforcement (*e.g.,* narcotics, stolen vehicle, criminal investigation, etc.) may not be immediately present at the actual roadblock. If their presence is required they may be called in to perform their duty once probable or reasonable cause is established by the officers validly conducting the roadblock. Their presence at the actual roadblock indicates the roadblock may be pretextual and could easily lead to abuse.

D.   *General Issues of Vehicle Searches*

  1.   *Ordering Occupants From Vehicles at Such Roadblocks*

2.15   Because of the limited nature of a driver's license and registration roadblock stop, the officers may not order or request a driver or occupant of a vehicle to get out of the vehicle unless there is some independent legal justification to warrant it; *i.e.,* legal justification exists when there are facts which lead the officers to suspect

that a crime has been or is about to be committed, or that the person presents some danger to the officer or others, or a stop and frisk is justified.

2.16   In *Pennsylvania v. Mimms,* 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), the Supreme Court stated that, on balance, it is reasonable under the Fourth Amendment for an officer to order a motorist lawfully subjected to a traffic stop from his vehicle for three reasons.   First, traffic stops can lead to police shootings as the officer walks up from behind the vehicle. *Id.* at 110, 98 S.Ct. at 333.   Second, there are obvious traffic hazards to the officer when he is standing next to the detained car.   *Id.* at 111, 98 S.Ct. at 333.   Finally, since the vehicle was lawfully detained with probable cause to believe a traffic offense occurred, ordering the driver from the vehicle is a de minimis intrusion.   *Id.*

### 2.   Burden of Justifying Warrantless Searches

■   2.17   Any warrantless search of a vehicle is presumptively unconstitutional. *See e.g., United States v. Ross,* 456 U.S. 798, 824, 102 S.Ct. 2157, 2172, 72 L.Ed.2d 572 (1982); *Colorado v. Bannister,* 449 U.S. 1, 2–3, 101 S.Ct. 42, 42–43, 66 L.Ed.2d 1 (1980); *Payton v. New York,* 445 U.S. 573, 586 n. 25, 100 S.Ct. 1371, 1380 n. 25, 63 L.Ed.2d 639 (1980); *Mincey v. Arizona,* 437 U.S. 385, 390, 98 S.Ct. 2408, 2412, 57 L.Ed.2d 290 (1978); *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 516 (1967); *Stoner v. California,* 376 U.S. 483, 486, 84 S.Ct. 889, 891, 11 L.Ed.2d 856 (1964); *United States v. Jeffers,* 342 U.S. 48, 51, 72 S.Ct. 93, 95, 96 L.Ed. 59 (1951).

■   2.18   The burden is on the State to show legal justification for it; *e.g.,* vehicle exception, search incident, consent, plain view, or whatever.   *United States v. Matlock,* 415 U.S. 164, 174, 94 S.Ct. 988, 994, 39 L.Ed.2d 242 (1974); *Vale v. Louisiana,* 399 U.S. 30, 34, 90 S.Ct. 1969, 1971, 26 L.Ed.2d 409 (1970); *Bumper v. North Carolina,* 391 U.S. 543, 549, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797 (1968); *Wong Sun v. United States,* 371 U.S. 471, 482, 83 S.Ct. 407, 414, 9 L.Ed.2d 441 (1963); *United States v. Jeffers,* 342 U.S. 48, 51, 72 S.Ct. 93, 95, 96 L.Ed. 59 (1951); *Glason v. State,* 272 Ark. 28, 611 S.W.2d 752 (1981); *Smith v. State,* 265 Ark. 104, 576 S.W.2d 957 (1979); *Moore v. State,* 265 Ark. 20, 576 S.W.2d 211 (1979); *Rowland v. State,* 262 Ark. 783, 561 S.W.2d 304 (1978); *Thomas v. State,* 262 Ark. 83, 553 S.W.2d 41 (1977); *Freeman v. State,* 258 Ark. 617, 527 S.W.2d 909 (1975); *Asher v. City of Little Rock,* 248 Ark. 96, 449 S.W.2d 933 (1970).

### 3.   Plain View Searches

■   2.19   A valid, non-pretextual roadblock may support a plain view of the readily-visible interior of a vehicle.   *See Colorado v. Bannister,* 449 U.S. 1, 4, 101 S.Ct. 42, 43, 66 L.Ed.2d 1 (1980).

■   2.20   A roadblock cannot, however, be constitutionally conducted for the purpose of conducting a plain view because such a purported "plain view" lacks the inadvertence and prior valid intrusion requirements of the plain view doctrine.   *See Coolidge v. New Hampshire,* 403 U.S. 443, 466–68, 469–71, 91 S.Ct. 2022, 2038–39, 2040, 29 L.Ed.2d 564 (1971), and cases cited in ¶s 2.7–2.9, *supra.*

■   2.21   As a general rule, a "drug dog" cannot be used indiscriminately without any justification at all because such a search constitutes a general exploratory search.   *United States v. Beale,* 674 F.2d 1327 (9th Cir.1982); *Jones v. Latexo Ind. School District,* 499 F.Supp. 223, 234–35 (E.D.Tex.1980); *People v. Williams,* 51 Cal. App.3d 346, 124 Cal.Rptr. 253 (1975).

### 4.   Justification and Scope of Vehicle Searches

2.22.   Complete searches of vehicles, trunks, and luggage occurred at the roadblock in Silverman's and Somers' cases. The search was based on the officer allegedly seeing marijuana seeds on the floorboard or a "roach," a marijuana cigarette butt, in the vehicle ashtray.

■ 2.23. A vehicle is not subject to search at will. "[T]he *Carroll* doctrine does not declare a field day for the police in searching automobiles. Automobile or no automobile, there must be probable cause for the search." *Almeida-Sanchez v. United States,* 413 U.S. 266, 269, 93 S.Ct. 2535, 2537, 37 L.Ed.2d 596 (1973), *citing Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

■ 2.24 "[A] search which is reasonable at its inception may violate the Fourth Amendment by virtue of its intolerable intensity and scope . . . . The scope of a search must be 'strictly tied to and justified by' the circumstances which rendered its initiation permissible." *Terry v. Ohio,* 392 U.S. 1, 18–19, 88 S.Ct. 1868, 1878, 20 L.Ed.2d 889 (1968). Probable cause or consent is always required for a vehicle search.

■ 2.25 Once a valid stop occurs, justification for a greater intrusion may arise. The officer may then gain cause to conduct a stop and frisk or probable cause for a search of the interior under the automobile exception or the search incident doctrine. The result of that intrusion may give probable cause to believe criminal evidence is in the trunk. Only then can a search of the trunk be initiated. *United States v. Ross,* 456 U.S. 798, 822–25, 102 S.Ct. 2157, 2171–72, 72 L.Ed.2d 572 (1982).

■ 2.26 Finding marijuana seeds, a pipe with marijuana residue in it, a "roachclip," or a few "roaches" in the passenger compartment does not, without more, give probable cause to believe that marijuana or other drugs are being transported in the trunk. It only provides probable cause to believe that small amounts of marijuana for personal use may be found in the vicinity of what was found, except that a "roachclip" is not probable cause to believe any offense has occurred because it could be decorative. *Wimberly v. Superior Court,* 16 Cal.3d 557, 128 Cal.Rptr. 641, 651, 547 P.2d 417, 427 (1976) (stop because driver appeared intoxicated; 12 marijuana seeds found; search incident of interior valid but search of trunk under automobile exception

invalid because probable cause did not extend to trunk); *People v. Gregg,* 43 Cal. App.3d 137, 117 Cal.Rptr. 496, 499–500 (1974) (marijuana seeds, pipe with marijuana in it, and smell of freshly burning marijuana not probable cause to search trunk; court notes that possession of substantial quantity of marijuana in passenger compartment may create probable cause to believe more is in the trunk); *Gill v. State,* 625 S.W.2d 307 (Tex.Cr.App.1980) (officer seeing driver of parked car about to "shoot up" did not have probable cause to search trunk for drugs); *State v. Patino,* 163 N.J. Super. 116, 394 A.2d 365 (1978); *Commonwealth v. Long,* 489 Pa. 369, 414 A.2d 113 (1980); *Bailey v. State,* 319 So.2d 22 (Fla. 1975), *aff'd.,* 295 So.2d 133 (Fla.App.1974) (*accord.*); *People v. Blixt,* 37 Ill.App.3d 610, 346 N.E.2d 31, 33 (1976) (*accord.*); search of box in glove compartment invalid). *See also State v. Finklea,* 313 So.2d 224 (La. 1975) (marijuana seeds on floor seen at night not a possible plain view; search invalid). In *Wimberly, supra,* 128 Cal.Rptr. at 651 n. 9, 547 P.2d at 427 n. 9, and *Gregg, supra,* 117 Cal.Rptr. at 499, both courts found it significant that the amounts seen were all consistent with personal usage. *Wimberly* also noted that the odor of marijuana emanating from the trunk would be probable cause to believe much more was in the car, *citing People v. Cook,* 13 Cal.3d 663, 119 Cal.Rptr. 500, 532 P.2d 148 (1975). Therefore, as a general rule, probable cause to search the trunk should not arise until the inference level of possession with intent to deliver a controlled substance were passed by what was found in the passenger compartment, which, in Arkansas in the case of marijuana, is one ounce. Ark.Stat. Ann. § 82–2617(d) (Supp.1981). Other things, of course, may provide probable cause for a search of the trunk.

### 5. *Initiation of Consent Searches*

■ 2.27 Consent obtained at a driver's license check roadblock, as any other consent, is presumptively involuntary, and valid consent must be proved by clear and convincing evidence. *See Rodriquez v. State,* 262 Ark. 659, 559 S.W.2d 925 (1978).

The State has a heavy burden because of the inherently coercive circumstances involved in a roadblock of this sort. *Compare Schneckloth v. Bustamonte*, 412 U.S. 218, 229, 93 S.Ct. 2041, 2048, 36 L.Ed.2d 854 (1973). ("To approve of [consent] searches without the most careful scrutiny would sanction the possibility of official coercion.").

2.28 The Fourth Amendment requires that the police cannot request a consent to search without at least a reasonable or articulable suspicion to believe that there is contraband or criminal evidence where the police propose to look. *See* Hall, Search and Seizure § 4.5, at 103 (1982). *Nakamoto v. Fasi*, 635 P.2d 946 (Hawaii Sup.Ct.1981); *See also Meadows v. State*, 269 Ark. 380, 602 S.W.2d 636, 638 (1980) (unlawful to stop a person and ask him his identification on bare suspicion; State's secondary argument of consent rejected as acquiescence to a claim of authority. "To sum up, if the officer's conduct in this case is proper, then any law enforcement officer may stop a citizen at any time, without reasonable grounds for suspicion, request identification, and arrest and search the citizen if his identity uncovers an outstanding felony warrant. We need not sift through the Supreme Court's decisions to find that tribunal's probable answer to the question presented by this case. Our own Rules of Criminal Procedure unmistakably require that the evidence seized in this case be suppressed").

6. *The DEA Profile Is Not Reasonable Suspicion or Probable Cause*

2.29 Use of the DEA drug courier profile to conduct a search of a rental truck or trailer or any vehicle, without more, violates the Fourth Amendment. *See Reid v. Georgia*, 448 U.S. 438, 100 S.Ct. 2752, 65 L.Ed.2d 890 (1980); *United States v. McCaleb*, 552 F.2d 717 (6th Cir.1977).

E. *Overall Considerations*

2.30 The parties agree and the court finds that the Arkansas State Police made a good faith effort to plan this road-

block, but that the problems which developed were not adequately anticipated. It was proper (assuming an interstate highway roadblock is proper) that the roadblock was planned for in advance, that some legal advice was sought, that it was a top management decision, that manpower and safety needs were considered, that the location was based on making the roadblock easier and safer to conduct (*i.e.*, near a rest area), that an initial effort was made to stop all vehicles, that officers with specialized duties such as criminal investigators and narcotics and others would stay in the rest area, that the Arkansas Highway and Transportation Department was enlisted to provide traffic control devices, and that officers were briefed as to their duties. It is obvious this roadblock was not a spur-of-the-moment decision by an officer in the field.

2.31 The plan was followed when the roadblock began.

2.32 The defendant's contention that criminal arrests were anticipated from the roadblock only states the obvious fact that this roadblock was going to generate many non-traffic criminal arrests. On the other hand, plaintiffs contend that this roadblock, based on the statements made in Plaintiffs' Exhibits A and B and C, was a pretext to conduct searches for criminal evidence without probable cause and to see what was moving down the interstate. *See also United States v. Cupps*, 503 F.2d 277, 282 (6th Cir.1974) ("Police may not use their general inspection powers as a pretext for stopping motorists for the purpose of inquiring about their business on the public highways.").

2.33 The Arkansas investigative detention law, passed in 1969 in response to *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), imposes far more stringent safeguards on a stop of a suspected felon or misdemeanant or witness to crime than does the law of roadblocks. *See* Ark.Stat. Ann. §§ 43–429—43–436 (Repl.1976); *compare* Ark.R.Crim.P. 3.1–3.5 on stop and frisk which may or may not supersede that statute. Arkansas law puts a fifteen minute time limit on a stop and frisk detention.